**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

VISION MEDIA TV GROUP, LLC                 Civil Action No. 09cv80396
a Florida Limited Liability Company,
John Vazaios, Christian Kelch, Gary James
Linda Shields, Matthew McMahon, Linda Gibbs,
Linda Galligan, Tony Landa, Paul Bemic
Paul Demic, Chris Kelch, Diana, Janette Morrison
Seth Peters, Jeff Slavin, Cathy Proctor, Kristin Sloan
Bill Hough, Dr. Matt McMahon, Michael Rawlinson,
Leon Grober, Paul Demnick, Kate Larsen, Alex Berry
          Plaintiffs,
v.

JULIA FORTE personally and
JULIA FORTE d/b/a www.800Notes.com
Advent LLC, Jane Doe (aka "BEWARE")
          Defendants.
_____/


**PETITION FOR PRELIMINARY INJUNCTION**
**SECOND AMENDED COMPLAINT**

       NOW COMES, VISION MEDIA TV GROUP, LLC, (hereinafter "VISION MEDIA TV

GROUP, LLC") a Florida Limited Liability Company, and the above-captioned individual

private Florida citizens with the consent of the above-captioned defendants, and hereby files this

Petition for a Preliminary Injunction and Second Amended Complaint with regard to the

jurisdictional allegations, against JULIA FORTE personally and JULIA FORTE d/b/a

www.800Notes.com Advent LLC and allege as follows:

## JURISDICTION AND VENUE

1.      This court has jurisdiction over the claims pursuant to 28 U.S.C. § 1332; the parties to this matter are citizens of different states and the matter in controversy the sum of $75,000.00, exclusive of interest and costs.

2.      Venue is proper under 28 U.S.C. § 1391(a) in the Southern District of Florida in that a substantial part of the events and damages giving rise to the claims which are the subject of this complaint occurred in the Southern District of Florida and the victims, witnesses and evidence reside in the Southern District of Florida.

3.      Additionally, jurisdiction is proper in the Southern District of Florida under 28 U.S.C. 1332 because Defendants, residents of North Carolina, have committed tortious acts within the State of Florida and have sufficient contacts within the state of Florida by virtue of internet marketing directed to Floridians as well by intentionally causing harm to the Plaintiffs who are Florida residents and a Florida Company (See Paragraph 7 below). Specifically: Defendants, after having received actual notice that they were doing so, violated and continue to violate the Florida Anti-Dilution Act (Fl. Statutes Chapter 495) by misleading the public with regard to the services offered under Plaintiff's trade names, marks and brands. Additionally, Defendants, after having received actual notice that they were doing so, committed and continue to commit the tort of libel and defamation by implication against plaintiff private Florida citizens by casting these citizens in a false light, using their private identities, to mischaracterize them as "telemarketing scammers". Moreover,  defendants have been participating in and providing the

means, after having received actual notice that they were doing so, for the circumvention of confidentiality agreements governed under Florida Law between Plaintiffs, Former Employees and Former Litigants by affording them anonymity and encouraging users of Defendant's service to therefore submit unlawful content – i.e. content allegedly in violation of employee non-disclosure agreements, confidential settlement agreements executed to resolve previous federal defamation and libel suits.   Defendants have also engaged in this tortious conduct for the commercial purpose of generating advertising revenues by substantially editing – even to the point of plenary deletion of positive comments coupled with negative comment optimization - content in order to create  a sensational feeding frenzy, especially in South Florida where the Plaintiff has been operating for many years and where loyal clients as well as former disgruntled employees reside, on the Defendant's internet service in order to increase traffic and, therefore advertising revenue, and  thereby injuring the Plaintiffs and misleading the public in the Southern District of Florida. The Defendants, despite Plaintiffs' attempts to avail itself of the abuse procedures in Defendant's terms of use page, refused to comply with their own terms of use which are aimed at, and allegedly bind, citizens and residents of South Florida. The Defendant's malicious breach of their own terms of use; dilution of Plaintiff's trademarks, trade names, and brands, posting of, and encouragement of the posting of, unlawful content; invasion of privacy of Florida residents, have been directed toward private Florida residents with access to the internet which is a substantial advertising market. Moreover, the defendant has specifically targeted Plaintiff's IP addresses located in Florida by taking down rebuttal materials posted by

Plaintiffs while allowing contrary materials to be posted by other posters in other states. It is further believed that Jane Doe, "Beware" is a resident of North Carolina. In any event, the identity of Jane Doe "Beware" resides with Defendant Forte who is a resident of North Carolina.

4.     Jurisdiction is further proper in that the Defendants have committed tortious and intentional acts within the State of Florida within the meaning of Fla. Stat. 48.193(1)(b) and Fla. Statutes Chapter 495.

5.     Jurisdiction and venue are proper in that the Defendants have engaged in substantial and not isolated internet advertising activity within the state, and the Southern District of Florida, within the meaning of Fla. Stat. 48.193(2).

6.     The court has jurisdiction to enter a temporary and permanent injunction order pursuant to Fed. R.Civ.P. 65.

## THE PARTIES

7.     Plaintiff, VISION MEDIA TV GROUP, LLC, whose member-managers, Accurate Consulting Trust and Infinity Holdings Trust are Florida Entities operating and located in South Florida, is now and at all times mentioned in this Complaint a limited liability company organized, operating and existing under the laws of the State of Florida, having an address at 1515 N. Federal Highway, Suite 300, Boca Raton, FL 33432, Palm Beach county, Florida. The above-captioned individual plaintiffs captioned above are private Florida residents who work or have worked for Vision Media   and who reside in South Florida.

8.     The Plaintiff, VISION MEDIA TV GROUP, LLC is a well-known television

production company which produces short-form educational documentaries that air regionally, nationally and internationally to over 96 million households.  Plaintiff has been doing business under the trade name of VISION MEDIA TV GROUP, LLC in said commerce and its mark is now famous.  VISION MEDIA TV GROUP, LLC also produces documentaries that they distribute to Public Television. Hugh Downs, the former news anchor of 20/20, is also famous and presently hosts the documentaries produced by VISION MEDIA TV GROUP, LLC which distributes on Public Television. These actions by the defendants have adversely affected Vision Media's as well as Mr. Downs' impeccable reputations. This has enormously damaged Mr. Downs and the Plaintiffs.

9.      The Defendants, JULIA FORTE, personally and d/b/a www.800Notes.com, and Advent LLC (managed and owned by Julia Forte), upon information and belief, reside in North Carolina.

10.     The Defendants, JULIA FORTE, personally and JULIA FORTE d/b/a www.800Notes.com; Advent LLC are essentially in the advertising business. They are organized as a web based natural person and a limited liability company. The defendant's derive their income by driving traffic to their site by encouraging online gripes with regard to the telemarketing industry with a particular interest in  "anonymous" "800" and other telephone numbers where posters reveal their experiences with "unknown callers." The site encourages defamatory postings by anonymous posters and editorially puts the postings in whatever light best serves the sensationalism of the particular issue to drive more activity to the sight – even if

doing so puts the subject of the post in a false light which is the case in this matter.

11.    Defendants, JULIA FORTE and Advent, LLC d/b/a www.800Notes.com created, own and operate www.800Notes.com. Essentially, www.800Notes.com is an advertising business. Julia Forte generates traffic, and thereby, advertising revenue by:

A.    Directly publishing her own commentaries;

B.    Publishing her commentaries by substantially editing – including editing by plenary deletion - and altering others' posts especially with regard to their context in order to generate and present defamatory statements – with the purpose of increasing traffic to the site and thereby increasing revenues and income of their advertising business;

C.    Actively participating in and encouraging the circumvention of legally binding agreements by certain "anonymous" individuals allegedly legally bound to refrain from any, but especially, defamatory postings about Plaintiffs;

D.    Actively creating a false, sensational context for postings about Plaintiff by removing positive comments, optimizing negative comments and foreclosing rebuttal opportunities in order to generate interest and advertising income on her web site by casting Plaintiffs in a libelous, defamatory by implication, and false light, tarnishing and diluting, the Plaintiff's trademarks, trade names, and brands;

E.    Allowing for the posting of false information by anonymous individuals and hiding their identity which has and continues to mislead the public with regard to

what type of business Plaintiff is and what type of business Plaintiff's well established

trademarks, trade names and brands represent;

F.        Substantially editing and customizing the content of her site, even by

plenary deletion, of many positive comments regarding the Plaintiff (including a post

that highlighted the Plantiff's A- rating with the BBB of South Florida) in order to

directly convey her own libelous characterization of Plaintiff as a "scamming

telemarketing company". Additionally, defendants have defamed by implication and

libeled private Florida citizens who work for Plaintiff, by falsely characterizing them

as telemarketers and scammers by Defendants.

12.    The Defendants operate out of North Carolina. However, knowing that Plaintiff is

located in South Florida, consumers located in the Southern District of Florida have been

targeted via the defendants' web sites by the posting of Plaintiffs location.

13.    The Defendants have an abuse procedure allegedly for circumstances such as this

one. Through said procedure Plaintiffs gave defendants direct knowledge of the: unlawful

content, the dilution of its marks and the defamation by implication and libel of the private

Florida citizens on defendants' site. In response, the defendants: (a) ignored Plaintiffs' requests to

rectify the matters and, in fact,   began substantially editing the context and content of the subject

site in such a manner as to further harm the plaintiffs while at the same time increasing

advertising revenues, (b) stone-walled the Plaintiffs and continue to hide the identity of the

anonymous posters who are defaming Plaintiffs, (c) invaded the privacy of Florida citizens and

has since expanded such invasions; (d) continued to mislead the public and to dilute Plaintiff's trademarks, trade names, and brands by substantially altering and editing the content of the subject site by removing positive and accurate references with regard to said marks and brands as a television production company rather than a scamming telemarketing company.

### GENERAL ALLEGATIONS

14.     On or about December 2008   VISION MEDIA TV GROUP, LLC began losing business because clients were being misled by www.800notes.com which: (a) is essentially an advertising business which publishes Ms. Forte's own commentaries directly as well as indirectly by her selective allowance and prohibition of others' posted commentaries in order to create the context Ms. Forte deems best so as to serve her interests of increasing traffic and, thereby, advertising revenues on the internet and (b) protects anonymous defamers by refusing to identify them upon request by victims even after the victims prove the defamatory nature of the postings.

15.     Ms. Forte substantially edits, alters, and even completely deletes others' posts, (especially with regard to their context) with the intention of generating sensationalism in order to increase traffic, and thereby advertising revenues to her site.

16.     Ever since December 2008, the Defendants, by her above-mentioned activities, have knowingly and intentionally encouraged the posting of unlawful, defamatory content which has mislead and continues to mislead the public about the Plaintiffs and the Plaintiff's brand in order to increase advertising revenues.

17.     Despite the Plaintiff's communications proving the posts to be false, Defendants have actively and substantially edited, and continue to actively edit, by context and content manipulation, and even by plenary deletion, defamatory content on the subject site about the Plaintiffs.

18.     At the same time, Defendants have prohibited the Plaintiffs from setting the record straight by blocking Plaintiff from posting on said site and by the plenary deletion of content Plaintiff had posted prior to being blocked by Defendants.

19.     The defendants' above-described process of editing has been engaged in by Defendants in furtherance of increasing traffic and advertising revenues by sensationally presenting the Plaintiffs in a libelous and defamatory by implication manner.

20.     The defendants' above-described process of editing also actively participates in and encourages the posting of unlawful content by creating a method for the circumvention of legally binding agreements by certain "anonymous" individuals who, in this case, the Plaintiff alleges are legally bound to refrain from any, but especially defamatory, postings about Plaintiff. Defendant has received from Plaintiffs actual notice of this activity. Plaintiff has it on information and belief that "Beware" is such an individual.

21. In furtherance of defendants' goals of increasing advertising revenues they  have created, and they continue to actively create, a negative context for postings about the Plaintiff by removing positive comments and foreclosing rebuttal opportunities by

blocking Plaintiff's IP Addresses and servers.

22. Through the defendants' above-mentioned editing process the defendants have libeled Plaintiff and have defamed by implication Plaintiff all in the name of commercial speech published with the goal of increasing advertising revenues.

23. The Defendants' above-described editing process intentionally misleads the public into believing that the Plaintiff is a telemarketing company and a scammer. The Plaintiff is a well-regarded television production company which is what Plaintiff's brand means to the consuming public. Therefore, Plaintiff has diluted and tarnished the Plaintiff's brand as a source indicator in violation of Florida Unfair Trade Practices Laws as well as The Lanham Act.

24. The defendants, by the aforementioned editing process, have intentionally misrepresented not only what service the brand represents, to the public but, also the quality of the Plaintiff's services. Specifically, for defendants' own commercial purposes (i.e. creating a greater advertising value for her sight by driving traffic to same), Ms. Forte has removed any positive comments highlighting the Plaintiff's A-rating with the BBB of South Florida. The defendants have taken these actions, and libeled the Plaintiff in a false light with commercial speech in order to increase advertising revenues as stated above.

26.   Between December 2008 through the present, Plaintiff attempted to work through Defendants' own procedures to achieve an amicable resolution. Defendants were

ultimately unresponsive and did not participate in their own abuse rectification procedure. Instead, Defendants substantially altered the content and context of the postings on Defendant's site by removing positive and accurate references to the Plaintiff, Plaintiff's reputation, and the Plaintiff's business model which properly portray Plaintiff as an A- rated BBB television production company rather than in the libelous manner whereby Plaintiff is portrayed as a scamming telemarketing company.

27.     Additionally, Defendant has posted Plaintiff's trademark and trade names  - VISION MEDIA TV GROUP, LLC   - on her web site in an effort to drive traffic and encourage the posting of unlawful content. This is not a fair use of Plaintiff's trademark. Rather, it is a commercial use. Said use infringes on said mark. The Defendants' use of Plaintiff's mark dilutes the strength of the Plaintiff's trademark as a source indicator for professional television production services rather than telemarketing services. Defendants have continued this practice despite Plaintiff's provision of evidence contradicting said assertions. The Defendant's activities violate Plaintiff's rights in it trademark under the Lanham Act as well as under Florida Trademark and Fair Trade Practices Laws.

28.     The Defendants also invades the privacy of Plaintiff's employees, who are private citizens, by listing their names which had previously been private information. These individuals are cast in a false light as scamming telemarketers rather than employees of a well-reputed television production company. The defendant's persistent allowance of these postings through the above-mentioned editing process, and after appeal by

Plaintiffs to Defendants to cease this activity, is clear evidence that the Defendant is directly – via the defendant's editing process – posting unlawful content, as well as encouraging the posting of unlawful content (the heretofore private identities of employees). It is also evidence of the defendants' provision of a process encouraging the circumvention of legally binding confidentiality agreements.

29.     Defendant's actions have caused the Plaintiff damages and irreparable harm for which there exists no legal remedy.

## PRELIMINARY INJUNCTION

Plaintiffs, re-alleges paragraphs 1-29 as if fully set forth herein. The centerpiece of this Petition and Second Amended Complaint is the Plaintiff's respectful request for an injunction compelling Defendant Forte to identify an anonymous poster (Jane Doe - a.k.a. "Beware"). This injunction is necessary because otherwise the Plaintiffs have no redress against the anonymous poster and will be deprived of any remedy for the harm they have suffered.

30.     Plaintiffs, are suffering and will continue to suffer, irreparable harm if the anonymous bloggers' identities are not revealed. Particularly, the identity of Jane Doe a.k.a. "Beware" must be revealed. Only Forte has the required information;

31.     Plaintiffs have no adequate remedy at law if the identity of the anonymous blogger

is not revealed by Forte;

32.     Plaintiff has stated a prima facie case that Jane Doe ("Beware") has published

false statements of fact which have harmed and continue to harm the Plaintiff. Plaintiff stands a

substantial likelihood of success on the merits with regard to a defamation suit against the

anonymous blogger "Beware". As set forth herein, "Beware" has posted false and damaging

statements on Fortis' site falsely stating that Plaintiff is a telemarketing scammer. Forte's own

memorandum acknowledges that Plaintiff is a television production company.

A.    Attached to this complaint is evidence that Jane Doe: "BEWARE" (and other

anonymous bloggers)    knowingly and intentionally libeled Plaintiffs, by directly publishing
false

statements of fact such as: (1)"what scammers"; (2)"this is a telemarketer    and a scam"; (3)

"scam"; (4)"Watch out. what fraud"; (5)"Looks like they are trying to scam people on the
Heroes

angle"; (6) "THIS IS A SCAM"; (7) "these people are NOT television producers they are

telemarketers"; (8) "STEER CLEAR OF THESE PEOPLE. THEY ARE SCAMMERS".

(9) "The Truth is they send these poorly made infomercials to CNBC, Fox, etc., and hope they

play it. That's why they show you POST-AIRING AFFIDAVITS and not the media buy itself.

They don't buy the time".

B.    These defamatory statements have been proven false to the Defendant Forte.

Attached are the actual airing affidavits and the Plaintiff's Better Business Bureau A- Rating.

Jane Doe "Beware" has caused the injurious statements which are libelous per se because they

harm the Plaintiffs in their trade and profession, and hold them up to ridicule and disdain to be

published on the internet.

    C.    Jane Doe "Beware" 's libelous statements alleged that Plaintiffs and VISION

MEDIA TV GROUP, LLC were/are not legitimate businesspeople at all and that that they are

committing fraud have damaged and continue to damage the Plaintiff as well as Hugh Downs.]

The attached exhibits clearly evidence that Plaintiff is actively airing television spots for multiple

shows. Therefore, the Plaintiffs have stated a prima facie case of libel per se as well as dilution

of

Plaintiff's trademark and trade name. Said cases have a substantial likelihood of success on the

merits.

    33.    A Preliminary Injunction will serve the public interest because it will narrow and

make more efficient the litigation at hand. This particular area of law contains little precedent.

However, two recent high profile cases recently reached the news. The most recent case is Cohen

vs. Google. In that case, GOOGLE was required to disclose the identity of an anonymous

Blogger. The Supreme Court of the State of New York in: In the Matter of the Application of

Liskula Cohen, Petitioner for an Order compelling GOOGLE, INC. and/or its subsidiary

BLOGGER.COM, Respondents, noted, through The   Honorable New York Supreme Court

Justice Joan Madden, the information is material and necessary to the Plaintiff seeking redress

against the incredible potential for abuse by anonymous posters on the internet. The Court

rejected the argument that internet blogs serve as a modern day forum for conveying personal

opinions, including invective and ranting, and the statements cannot be reasonably understood as

factual assertions. (paraphrasing paragraph one page 8 of the attached Supreme Court of The State of New York opinion re: GOOGLE). The New York Court relied on a Virginia Supreme Court decision: In re: Subpoena Duces Tecum to America Online, Inc. 542 SE2d 377. In that case, the Virginia Supreme Court articulated its concern about anonymous defamers : " In that the internet provides a virtually unlimited, inexpensive, and almost immediate means of communication with tens, if not hundreds, of millions of people, the dangers of its misuse cannot be ignored. The protection of the right to communicate anonymously must be balanced against the need to assure that those persons who choose to abuse the oppourtinies presented by this medium can be made to answer for such transgressions. Those who suffer damages as a result of tortious or other actionable communications on the internet should be able to seek appropriate redress by preventing the wrongdoers from hiding behind an illusory shield of purported First Amendment rights".

34. This matter at hand is exactly in line with the GOOGLE and the AOL cases. The Courts seem to be employing a balancing test in this new area of law. Those seeking the identity of anonymous posters must satisfy the court that:

A. the anonymous person whose identity is sought must be sufficiently identified. Here, we have identified "Beware". Defendant Forte has the information to identify this Jane Doe.

B. the plaintiff seeking the information must have taken steps to identify the Jane Doe. In our case we have taken steps by working through the defendant Forte's abuse process

and requesting the information.

        C. the Plaintiff must show a prima facie case with substantial likelihood of success on the merits. The Plaintiff has done this by these pleadings which are supported by the attachments.

        D. The Plaintiff must show that the information sought is central to advancing its cause. Clearly the identity of a co-defendant is central to this claim.

WHEREFORE, Plaintiff, respectfully requests this Honorable Court to require the defendant Fortis/800Notes to provide the identity of the anonymous defamers of the Plaintiff.

**OTHER CLAIMS FOR RELIEF**
**COUNT I**
**LIBEL Per Se**

   Plaintiffs, re-alleges paragraphs 1-34 as if fully set forth herein.

35.    Plaintiffs, have exhausted all remedies and have worked diligently through Defendants' abuse procedures to no avail. Therefore, Plaintiffs have no alternative manner in which to seek relief but to address these matters before this Honorable Court.

36.    Plaintiffs allege that the Defendants have knowingly and intentionally libeled Plaintiffs, directly and by way of the defendants' editing process described above, by knowingly and intentionally publishing false statements, after notice that same were false, such as: : (1)"what scammers"; (2)"this is a telemarketer   and a scam"; (3) "scam"; (4)"Watch out. what fraud"; (5)"Looks like they are trying to scam people on the Heroes angle"; (6) "THIS IS A SCAM"; (7)

"these people are NOT television producers they are telemarketers"; (8) "STEER CLEAR OF THESE PEOPLE. THEY ARE SCAMMERS".   (9) "The Truth is they send these poorly made infomercials to CNBC, Fox, etc., and hope they play it. That's why they show you POST-AIRING AFFIDAVITS and not the media buy itself. They don't buy the time".

37. Defendants did knowingly and intentionally libel Plaintiffs as set forth above for defendant's own commercial purposes. These defamatory statements have been proven false to the Defendant

Forte. Attached are the actual airing affidavits and the Plaintiff's Better Business Bureau A-Rating.

38.     The Defendants caused the injurious statements which are false to be published on the internet.   The statements alleged that Plaintiffs and VISION MEDIA TV GROUP, LLC were/are not legitimate businesspeople at all and that that they are committing fraud on small businesses.

39.     The injurious statements were read and continue to be read by many prospective client's of VISION MEDIA TV GROUP, LLC and the other plaintiffs.

40.     The Plaintiffs informed the defendants that the statements were false, damaging to Plaintiffs and were, influencing, and continue to influence, current and prospective clients of VISION MEDIA TV GROUP, LLC and the individual plaintiffs to not participate in Plaintiffs' business proposals as well as VISION MEDIA TV GROUP, LLC's documentaries or segments.

Defendants therefore, had direct knowledge of the falsity of the content they were creating as well as the harm that the content was causing.

41.     In fact, the false injurious statements were a material factor in inducing others not to work with the individual plaintiffs and VISION MEDIA TV GROUP, LLC in the production of its segments.

42.     As a proximate cause of the publication of the actions and false injurious statements published and made by the Defendants, Plaintiffs have suffered special damages as well as damage to their reputations.   Plaintiffs as a result of Defendants action lost the business of Springall Academy, Natural Villages and Institute for International Medicine which resulted in excess of $77,700.00.

43.     The acts of the Defendants have harmed Plaintiffs' reputation, severely harmed and Plaintiffs' goodwill.

44.     Defendants aforesaid acts have caused and will cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiffs will continue to suffer great and irreparable injury.

45.     Plaintiffs have no fully adequate remedy at law.

46.     Defendants actively encourage unlawful content in an electronic form of defamatory graffiti. To be sure, the defendants actively participate in, elicit and encourage the posting of libelous and unlawful content for commercial purposes. Defendants do not trumpet a mere call for comments, for the sake of free speech, but

through the editing and content generating process outlined above, publish false statements to third parties about Plaintiffs which damage Plaintiffs all to generate advertising revenues.

47. The defendants have also, therefore encouraged the posting of unlawful content by providing a mechanism for defamation defendants who the plaintiffs allege are legally bound by a court sanctioned settlement agreement to anonymously breach/circumvent said settlements and/or court orders and to resume their defamatory practices.

48. The defendants have also, therefore encouraged the posting of unlawful content by providing a mechanism for former/disgruntled employees who Plaintiffs allege are legally bound by severance and/or confidentiality agreements, to anonymously breach/circumvent said agreements.

49. The Defendants have refused to engage in meaningful discussion with regard to alternative ways to resolve these matters or to disclose the identity of the posters. The Defendants have thereby obstructed the Plaintiffs' efforts to seek justice and to enforce previous agreements and/or court orders.

50.    Plaintiffs further alleges that the Defendants, through the aforementioned editing process, have created false and unlawful content in the form of a false and defamatory context and environment which libels the Plaintiffs and portrays Plaintiffs in a false light (i.e. as a telemarketing scam rather than a BBB A- rated television production company).

51.    Plaintiffs further specifically alleges that the defendants have substantially edited

and altered content, even to the extent of plenary deletion and blocking Plaintiffs' context balancing content by shutting out Plaintiffs' servers, removing Plaintiffs' postings aimed at answering the offensive comments and which Defendants knew were linked to YouTube segments showing the high quality of Plaintiffs' work.

52.    Moreover, in defendants efforts to increase advertising revenues by invading Plaintiffs' privacy rights to not be cast in a false light,   home IP addresses to prevent the posting of positive information, and left the unlawful content posted by a former disgruntled employee who is legally bound to refrain from such conduct. The Defendant has thereby generated context and environment which portrays the Plaintiffs in a false light (i.e. as a telemarketing scam rather than a BBB A- rated television production company).

53.    A true and correct copy of the internet postings from www.800notes.com are attached herein as **Exhibit "A."**

54.    The offending statements and web site were accessed by persons who visited those web simply researching VISION MEDIA TV GROUP, LLC on the internet and person intending to do business with the Plaintiffs.

55.    The offending statements were of the nature of libel per se as they falsely state that VISION MEDIA TV GROUP, LLC is engaging in fraud and scamming.

56.    As a proximate result of the publication of the false and offending content created by Defendants, VISION MEDIA TV GROUP, LLC has suffered damages in excess of $1,000,000.00. Vision Media TV Group, LLC suffered a loss of reputation, valuable employees

and goodwill by being discredited in its professional field.

57.     As part of the effort to restore VISION MEDIA TV GROUP, LLC's reputation, VISION MEDIA TV GROUP, LLC demands that Defendants remove all internet offending statements about Plaintiff, post a correction and apology on all web sites where Defendants posted offending statements.  The form of the correction and apology is to be in the form approved by the court.

58.     Defendants aforesaid acts have caused and will cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiffs will continue to suffer great and irreparable injury.

59.     Plaintiffs have no adequate remedy at law.

60.     Individual Plaintiffs, and VISION MEDIA TV GROUP, LLC, were in final contract negotiations with several small business owners in an effort to service their businesses by producing segments featuring their business which VISION MEDIA TV GROUP, LLC was producing for its series which was to air on Public Television.

61.     Concrete examples of the catastrophic damage Defendants' irresponsible online conduct has caused Plaintiffs are: (i) Springall Academy; (ii) National Villages (iii) Institute of International Medicine. These agreements terminated as a direct result of Defendant's substantial alteration of content by creation of defamatory contexts for the postings, Defendant's negligence by her encouragement of anonymous posters who are likely in violation of termination agreements and/or court orders, trademark infringement, and casting the Plaintiff in a false light.

Each contract represented a value to VISION MEDIA TV GROUP, LLC of $25,900.00.

62.     The Defendants were aware that VISION MEDIA TV GROUP, LLC was an operating limited liability company in the business of producing short segments for television. The Defendants were also aware that VISION MEDIA TV GROUP, LLC and the individual plaintiffs were in operation to produce television shows and not as telemarketers.

63.     The Defendants intentionally and unjustly interfered with the business relationship between the Plaintiff and Springall Academy, Natural Villages and Institute for International Medicine and the other businesses by posting on the internet the offending statements.

64.     The offending actions of the Defendants have taken place in a context created by the Defendant, they continue as such and they are projected in a medium which targets VISION MEDIA TV GROUP, LLC's existing and potential clients, such as; SOS Children's Villages-USA, Inc.

65.     The offending content created in the form of the a defamatory context in essence requests the anonymous posting of "suspicious phone numbers" in order to expose frauds and then becomes the "encourager," "guardian" of, and "co-conspirator" with, those who would circumvent termination agreements and/or court orders requiring certain posters to refrain from such activity. This circumstance coupled with the Defendants' substantial contribution to content, her above-mentioned editing process makes her  an encourager of unlawful content in violation of the Zeran case: Zeran v America Online, Inc.,129 F.3d 327 (C.A.4(Va),1997).

66.     As a result of the defendants' actions and the resulting loss of VISION MEDIA TV GROUP, LLC's business relationship with Springall Academy, Natural Villages and Institute Internationally Medicine, the other, VISION MEDIA TV GROUP, LLC suffered loss of the economic expectancy arising from the relationship in the amount of $77,700.00. However, Plaintiffs allege that the losses are substantially in excess of $700,000.00 because they have verifiably lost at least 30 clients at $25,900.00 per transaction.

67.     Defendants aforesaid acts have caused and will continue to cause, great and irreparable injury to Plaintiff, and unless said acts are enjoined by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

68.     Plaintiffs have no adequate remedy at law for the harm arising caused by Defendants' intentional conduct.

## COUNT II

## TRADEMARK DILUTION

## FLORIDA STATUTES CHAPTER 495

69.     Plaintiff, VISION MEDIA TV GROUP, LLC, re-alleges paragraphs 1-29 as if fully set forth herein.

70.     For several years, Plaintiff has used the marks, trade names, labels and    forms of advertising: www.visionmediatelevision; VT Media; Vmedia TV; Vision Media Television; V Media; Vision Media; National Education Report; Heroes of Health Care; Ecoplanet; in commerce to identify Plaintiff's services.

71.     The Defendants, which comprise an advertising company, have diluted Plaintiff's marks for the purposes of increasing Defendants' advertising revenues by allowing the unauthorized use of Plaintiff's marks by posters on Defendant's site.

72.     The Defendant's use of Plaintiff's marks has created actual injury to Plaintiff's business and continues to create a likelihood of further injury to Plaintiff's business reputation and dilution to the distinctive quality of Plaintiff's marks.

73.     The Defendant's use of the Plaintiff's marks is deceptive and misleading to the public because it continuously attaches the Plaintiff's mark to a telemarketing company – which Plaintiffs are not – whereas the Plaintiffs are, or are part of, a television production company.

74.     The subject unauthorized uses of the Plaintiff's trade names, marks and

brands for the purpose of free-riding, creating increased traffic and therefore, increased advertising revenue, were read and continue to be read by many prospective

75.     The Defendants were directly informed of this unauthorized use of Plaintiff's marks and the fact that said unauthorized uses were influencing prospective clients of VISION MEDIA TV GROUP, LLC not to participate in VISION MEDIA TV GROUP, LLC's documentaries or segments.

76.     The acts of the Defendants have harmed Plaintiff's reputation goodwill.

69.     Defendants aforesaid acts have caused and will cause great and irreparable

injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

77.     Plaintiff has no adequate remedy at law.

## COUNT III

## DEFAMATION BY IMPLICATION – LIBEL

78.     The following individual, private citizen plaintiffs have been falsely listed by defendants directly and/or by defendants through the defendants' editing process as scamming telemarketers and frauds : John Vazaios, Gary James, Christian Kelch, Linda Shields,Matthew McMahon, Linda Gibbs, Linda Galligan, Tony Landa, Paul Bemic, Paul Demic, Chris Kelch, Diana, Janette Morrison, Seth Peters, Jeff Slavin, Cathy Proctor, Kristin Sloan, Bill Hough, Dr. Matt McMahon, Michael Rawlinson, Leon Grober, Paul Demnick, Kate Larsen, Alex Berry.

79.     The listing of these individuals as telemarketing scammers is not only false, it is highly offensive to a reasonable person and is injurious to the plaintiffs' reputations.

80.     Defendants have actual knowledge that they are defaming by implication and by libel these private citizens because Plaintiffs have directly apprised Defendants of this fact.

81.     Plaintiffs have suffered irreparable harm to their reputations as well as extreme emotional distress because defendant's have defamed them by implication, libeled them and invaded their privacy by the above-mentioned conduct.

## RELIEF REQUESTED

**WHEREFORE,** the Plaintiff respectfully requests:

A.      this Honorable Court to enter an injunction requiring the Defendants requiring Defendants to disclose the identities of certain posters (particularly Jane Doe a.k.a. "BEWARE") which Plaintiff alleges have committed libel per se and defamation and also may be bound by employment confidentiality agreements, settlement agreements and/or court orders.

B.      That the Court award all Plaintiffs compensatory damages for the value of the contracts between Plaintiffs and third parties who are no longer doing business with VISION MEDIA TV GROUP, LLC as a result of the Defendant's encouragement of the posting of unlawful content, substantial alteration of content by context creation leading to defamation by implication, trademark, trade name and brand dilution, and libel per se; as well as Defendant's complicity with posters circumventing settlement agreements, confidentiality agreements, and/or court orders in the amount of $1,000,000.00.

C.      That Defendants, and all officers, directors, agents, servants, employees, attorneys, successors, and assigns and all persons in active concert or participation therewith, be preliminarily and permanently enjoined and restrained from further defamatory communication, encouragement of the posting of unlawful content, substantial alteration of content by context creation leading to false light, trademark infringement, and libel per se via the internet, the mail or via any other outlet.

D.      That the Defendants remove all unlawful content and place all lawful content in a

context which does not defame by implication, or libel the Plaintiffs.

       E.     That Plaintiffs have and recover, pursuant to the laws of the State of Florida, in addition to its actual damages, punitive damages against the Defendants in the amount of $3,000,000.00.

       F.     That Plaintiffs have and recover its reasonable attorney fees incurred in this action.

       G.     That Plaintiffs have and recover its taxable costs and disbursements herein.

       H.     That Plaintiffs have other and such further relief as the Court may deem just and proper.

Lee E. Levenson, Jr.

By:_____
Lee E. Levenson, Jr.
Fla. Bar No.: 2429
2500 Quantum Lakes Drive - Suite 203
Boynton Beach, Florida 33426
(Office) 561-853-2118 - (Cell) 523-2118

Dated: