UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

VISION MEDIA TV GROUP, LLC,         )
    a Florida Limited Liability Company, *et al.*, )
                           )
             Plaintiffs,     )
                           )
        v.             )     Civil Action No. 09-80396
                           )
JULIA FORTE*, et al.*,        )
                           )
             Defendants.    )

**MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Motion to Dismiss or for Summary Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Memorandum in Support of Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A. Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B. Proceedings to Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A.     The Court Lacks Subject Matter and Personal Jurisdiction.. . . . . . . . . . . . . . . . . . . . . . 7

B.     The Complaint Should Be Dismissed, or Summary Judgment Should Be Granted,
     Because Forte Is Immune from Suit for the Content Placed on Her Web Site.. . . . . . . . . 10

        1. Forte Is Not an "Information Content Provider" Regarding Vision Media.. . . . . . . . . 12

        2. Vision Media's State Law Dilution Claim Does Not Evade Forte's Immunity... . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

*ALS Scan v. Digital Service Consultants,*
    293 F.3d 707 (4th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Almeida v. Amazon.com,*
    456 F.3d 1316 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Alvi Armani Medical v. Hennessey,*
    629 F. Supp. 2d 1302 (S.D. Fla. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Atlantic Recording Corp. v. Project Playlist,*
    603 F. Supp. 2d 690 (S.D.N.Y. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Austin v. CrystalTech Web Hosting,*
    125 P.3d 389, 211 Ariz. 569 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Barnes v. Yahoo!,*
    570 F.3d 1096 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Barrett v. Rosenthal,*
    40 Cal. 4th 33 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ben Ezra, Weinstein & Co. v. America Online,*
    206 F.3d 980 (10th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Best Van Lines v. Walker,*
    490 F.3d 239 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Brooks v. Blue Cross & Blue Shield of Fla., ,*
    116 F.3d 1364 (11th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Carafano v. Metrosplash.com,*
    339 F.3d 1119 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Carden v. Arkoma Associates*,
    494 U.S. 185 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Chicago Lawyers' Committee for Civil Rights Under Law v. Craigslist, Inc.*,
    519 F.3d 666 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cornelius v. DeLuca*,
    2009 WL 2568044 (E.D. Mo., Aug. 18, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*CPC Int'l v. Skippy Inc.*,
    214 F.3d 456 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Doe v. AOL*,
    783 So. 2d 1010 (Fla. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Doe v. MySpace*,
    528 F.3d 413 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Donato v. Moldow*,
    374 N.J. Super. 475, 865 A.2d 711 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

*e360Insight, LLC v. Comcast Corp.*,
    546 F. Supp.2d 605 (N.D. Ill. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Edward L. Nezelek v. Sunbeam Television Corp.*,
    413 So. 2d 51 (Fla. 3d DCA 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Emerald Investors Trust v. Gaunt Parsippany Partners*,
    492 F.3d 192 (3d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*FTC v. Accusearch*,
    570 F.3d 1187 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fair Housing Council v. Roommates.com*,
    521 F.3d 1157 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Flowers v. Carville*,
    310 F.3d 1118 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fortner v. Thomas*,
    983 F.2d 1024 (11th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Glen Raven Mills v. Ramada Intern.*,
    852 F. Supp. 1544 (M.D. Fla. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Goddard v. Google,*
     640 F. Supp. 2d 1193 (N.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Great Southern Bank v. First Southern Bank,*
     625 So. 2d 463 (Fla. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Green v. America Online,*
     318 F.3d 465 (3rd Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Harris v. Ivax,*
     182 F.3d 799 (11th Cir.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Howell by Goerdt v. Tribune Entertainment Co.,*
     106 F.3d 215 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hydro-Tech Corp. v. Sundstrand Corp.,*
     673 F.2d 1171 (10th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Internet Solutions Corp. v. Marshall,*
     557 F.3d 1293 (11th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Laborers Local 938 Trust Fund v. B.R. Starnes Co. of Fla.,*
     827 F.2d 1454 (11th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*e360Insight, LLC v. Comcast Corp.,*
     546 F. Supp. 2d 605 (N.D. Ill. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Licciardo v. Lovelady,*
     544 F.3d 1280 (11th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mattel, Inc. v. Walking Mountain Productions,*
     353 F.3d 792 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mazur v. eBay Inc.,*
     2008 WL 618988 (N.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McBee v. Delica Co.,*
     417 F.3d 107 (1st Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McMann v. Doe,*
     460 F. Supp. 2d 259 (D. Mass. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Meng v. Schwartz,*
     305 F. Supp. 2d 49 (D.D.C. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Menzies v. Doe,*
194 F.3d 174 (D.C. Cir 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Michael Caruso and Co. v. Estefan Enterprises,*
994 F. Supp. 1454 (S.D. Fla. 1998),
*aff'd,* 166 F.3d 353 (11th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mink v. AAAA Development,*
190 F.3d 333 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Murawski v. Pataki,*
514 F. Supp. 2d 577 (S.D.N.Y. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Nemet Chevrolet v. Consumeraffairs.Com,*
— F.3d —, 2009 WL 5126224 (4th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Neogen Corp. v. Neo General Screening,*
282 F.3d 883 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Perfect 10 v. CCBill,*
488 F.3d 1102 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Revell v. Lidov,*
317 F.3d 467 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Riley v. Merrill Lynch,*
292 F.3d 1334 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rolling Greens MHP v. Comcast SCH Holdings,*
374 F.3d 1020 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Schneider v. Amazon.com,*
31 P.3d 37 (Wash. App. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stayart v. Yahoo!,*
651 F. Supp. 2d 873 (E.D. Wis. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Strawbridge v. Curtiss,*
7 U.S. (3 Cranch) 267 (1806). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Swann v. Southern Health Partners,*
388 F.3d 834 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Thomson v. Gaskill,*
315 U.S. 442 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Toys "R" Us v. Step Two*,
    318 F.3d 446 (3d Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Universal Communication Systems v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19, 20

*Whitney Information Network, Inc. v. Xcentric Venture*,
    199 Fed. Appx. 738 (11th Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Xaros v. U.S. Fidelity and Guar. Co.*,
    820 F.2d 1176 (11th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Zeran v. America Online*,
    129 F.3d 327 (4th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

*Zippo Manufacturing Company v. Zippo Dot Com*,
    952 F. Supp. 1119 (W.D. Pa.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

**CONSTITUTION, STATUTES AND RULES**

United States Constitution, First Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Telecommunications Act of 1996
    47 U.S.C. § 230. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

    47 U.S.C. § 230(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    47 U.S.C. § 230(c)(1).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    47 U.S.C. § 230(c)(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    47 U.S.C. § 230(c)(3).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    47 U.S.C. § 230(e)(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    47 U.S.C. § 230(e)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Section 495.151, Florida Statutes

Federal Rules of Civil Procedure

    Rule 11.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    Rule 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Rule 12(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Rule 56.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Local Rule 7.5(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**MISCELLANEOUS**

Popken, *So-Called PBS "Production Company" Sues Blogger for $20 Million*,
  The Consumerist (August 26, 2008)
  http://consumerist.com/2008/08/so-called-pbs-production-company-sues-blogger
  -for-20-million.html. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Strom, *Company Pitches a Television Production, and Nonprofit Groups Are Wary*,
  New York Times (August 15, 2008),
  http://www.nytimes.com/2008/08/16/us/16pitch.html?_r=4&oref=slogin&oref=slogin. . 3

13E Wright, Miller & Cooper, *Federal Prac. & Proc.: Juris. 3d* (2009). . . . . . . . . . . . . . . . . . . 7

## MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(6) and 56 of the Federal Rules of Civil Procedure, and based on the accompanying memorandum of law, statement of material facts about which there is no genuine issue, and affidavits of Julia Forte and Paul Alan Levy, with attached exhibits, defendants Julia Forte and Octonet LLC move the Court to dismiss this action for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim on which relief can be granted, or, in the alternative, to grant summary judgment dismissing the action.

## MEMORANDUM IN SUPPORT OF MOTION

Vision Media is a company that makes television spots for non-profit groups and that gets new business by cold-calling prospective customers. In this case, Vision Media sues to suppress allegedly defamatory criticism posted on a message board, operated by defendant Julia Forte, where the public can comment on marketing calls that they receive. Instead of suing the critics themselves, Vision Media has sued the message board host. However, federal law immunizes hosts of Internet message boards against suit based on content placed on those message boards by others. 47 U.S.C. § 230. Despite two amendments to the complaint, Vision Media never specifies any allegedly defamatory words that it claims Forte herself placed on the web site, and its wholly conclusory allegations fail to plead around Forte's statutory immunity. Vision Media has also not shown that the Court has subject matter and personal jurisdiction. In any event, undisputed facts show that Forte neither created any of the allegedly actionable content nor did anything that would make her legally responsible for it. Accordingly, the complaint should be dismissed with prejudice.

## STATEMENT OF THE CASE

**A. Facts.**

Julia Forte is a North Carolina resident who, as an employee of the limited liability company

Octonet that she owns with her husband, runs the web site 800Notes.com.  Second Amended Complaint ("SAC") ¶¶ 9, 11; Forte Aff. ¶¶ 2-3.  Apart from a few news articles and essays about telemarketing that have nothing to do with plaintiffs or the allegations in this case, 800Notes is a message board on which the public can discuss marketing phone calls and their purveyors.  *Id.* ¶¶ 4-10 and attached exhibits.  Forte neither authors the message board postings nor chooses the marketers about which comments are made.  *Id.* ¶ 11.  Rather, after a member of the public receives a marketing call, he can search the 800Notes web site for information about the telephone number from which the call was placed, and, if so motivated, put his own comments on the message board about that telephone number.  *Id.* ¶ 10.  If no comments have yet been posted about that telephone number, the viewer is given the option of posting about that number and hence creating a new message board about the number.  *Id.* ¶ 14.  All forms for posting comments warn each poster to provide only truthful information and to avoid offensive language. *Id.* ¶¶ 12, 14, 26 and Exh. G, H. Although the site's Terms of Service forbid knowingly false postings,  they also make clear that the web host "does not monitor the content and takes no responsibility for such content," and is not "in a position to investigate, censor or otherwise ensure the accuracy of any comments, remarks or other information." *Id.* ¶ 9 and Exh. D, E.  An additional page on the web site informs Internet users about 47 U.S.C. § 230 and explains that, because the "content on 800notes.com is authored by users of the site," the site host cannot be sued over that content. The page urges that dissatisfied targets of criticism reply to such criticism explaining their own side of the story.  *Id.* Exh. F.[1]

---

[1]The facts recited in this statement are drawn from the non-conclusory allegations of the complaint and from the affidavit of Julia Forte and its attached exhibits, and from the detailed Statement of Material Facts About Which There Is No Genuine Issue under Local Rule 7.5(C).  The exhibits to the Forte affidavit are documents on which the complaint is based; "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute. *See, e.g., Brooks v. Blue Cross & Blue Shield of Fla.*,

When a viewer posts new content to the web site, including content about a new phone number not previously placed on the web site, the web site's software automatically and instantaneously places it on the message board without any human review or intervention. *Id.* ¶ 13. The site host looks at individual messages only when a viewer marks a message as abusive; in response, the message is either left in its entirety or removed in its entirety. Messages are not edited in any way. The most common reasons why messages are removed are that they are spam, contain advertising, or include vulgar language. *Id.* ¶ 16.

800Notes is supported by advertising, which is placed on the site under contracts with California and New York companies. *Id.* ¶ 18. However, the site does not sell goods or services; the site has no e-commerce functions; and advertising cannot be bought through the site. *Id.* ¶¶ 17, 19 Forte and her LLC have no contacts with Florida; indeed, Forte has never been to Florida. *Id.* ¶ 12.

Plaintiff Vision Media is a Florida company that makes video segments that advertise non-profit companies. SAC ¶ 8. The New York Times, http://www.nytimes.com/2008/08/16/us/16pitch .html?_r=3&oref=slogin&oref=slogin, and Consumers Union, http://consumerist.com/2008/08/ so-called-pbs-production-company-sues-blogger-for-20-million.html, have reported that Vision Media sells its services through a deceptive telephone marketing campaign that offers the prospect of free exposure on "public television," while obscuring that there will be a five-figure charge for inclusion in the program and that Vision Media has no connection whatsoever to the Public Broadcasting System. Forte Aff. Exh. J. Unknown viewers described these promotions in postings on 800Notes.com that linked to the New York Times and Consumers Union stories, and contained other criticisms of Vision Media. *Id.* Exh. I. The host of 800Notes.com neither authored any of

116 F.3d 1364, 1369 (11th Cir.1997)." *Harris v. Ivax*, 182 F.3d 799, 802 & n. 2 (11th Cir.1999).

these posts, nor made the choice to include Vision Media's marketing phone numbers on its message board, nor edited the content of these posts in any way.  *Id.* ¶ 11.

In early February 2009, counsel for Vision Media, Lee Levenson, Esquire,  threatened to sue 800Notes over these postings, claiming that they were false and defamatory, and invited Forte to accept a free trip to its Florida headquarters to learn the truth about the company.  Mr. Levenson acknowledged the existence of immunity from suit under 47 U.S.C. § 230, but warned that he was an expert at finding "new legal procedures" to  evade that immunity, and suggested that "the vagaries and expenses of litigation" made settlement of Vision Media's demands —  namely, removal of the criticisms within five days, coupled with disclosure of the posters' identities — the better outcome for her. *Id.* ¶ 29 and Exh. K.  Until Forte received that demand, she was unaware of the postings about Vision Media on the web site and, indeed, did not know what Vision Media was or that it is located in Florida.  *Id.* ¶ 21.  At the same time, a series of about two dozen rebuttal postings that favored Vision Media was placed on the web site.  The postings purported to represent a discussion among several different users.  However, a site user marked the postings as abusive, and on reviewing them Forte determined that almost all of them were posted from the same two IP addresses, indicating that they all came from just two individuals.  *Id.* ¶ 22.  Forte decided that the postings were spam, and removed them.  Mr. Levenson then protested the removal of the postings, and reiterated his demand for the removal of the criticism of Vision Media.  *Id.* ¶ 30 and Exh. L.

In subsequent correspondence with Mr. Levenson, Forte explained that the postings had been removed as spam, but urged Vision Media to post openly under its own name: "introduce yourself, address the concerns of the  public and your responses will stay there."  *Id.*  Following that exchange, both Mr. Levenson and other representatives of Vision Media posted comments that criticized the posters and defended Vision Media's position.  Those posts remain on the message board to this day.

-4-

*Id*. ¶ 20 and Exh. I.   Mr. Levenson reiterated his offer to provide Forte with a free trip to Florida to get her to take down the criticisms.  However, 800Notes does not accept payments from the subjects of posts on its message boards.  *Id.* ¶ 30.

## B.  Proceedings to Date

Vision Media filed this action against Forte, both individually and doing business as "Advent LLC," on March 9, 2009.  It pleaded claims for "false light," "tortious interference with business opportunity," and "trade libel," and attached a potpourri of documents that were apparently intended to show the loss of business that the message board postings had occasioned.  In an effort to plead around Forte's Section 230 immunity, Vision Media repeatedly but generally alleged that Forte had authored some content on the web site, that she had deliberately removed favorable postings about Vision Media to make it look worse, that she had "substantially alter[ed] and edit[ed' others['] posts," and that she had "actively encourage[d] circumvention of legally binding agreements" that forbade unidentified persons from disparaging Vision Media.  ¶ 11.  The complaint also mentioned in passing Vision Media's trademark and used the terms "dilute" and "infringement," but did not plead any claim under the trademark laws.  Although the complaint went on for 16 pages and included 20 pages of exhibits, the complaint neither set forth the allegedly defamatory (or false light) posts nor specified the portions of posts that were allegedly authored by Forte.

Although the complaint was not served immediately, Forte got wind of the complaint when a local law firm offered to defend her.  Forte retained undersigned counsel Mr. Levy, who warned Vision Media's counsel that his attempted end-run on Forte's federal immunity from suit would not succeed, both because the allegations about Forte's authorship of allegedly tortious comments were false, and because the complaint was too vague and conclusory.  Levy Affidavit, Exhibit L.  Mr. Levy warned that Forte would seek sanctions if the complaint were served, but offered to waive

service if Vision Media persisted in the suit. *Id.* During conversations with Mr. Levy, Mr. Levenson repeatedly offered to provide specific examples from the web site where Forte had allegedly encouraged defamatory content. However, such details were never supplied. *Id.,* Exhibits M, N**.**

On July 1, Vision Media amended its complaint. It deleted the three causes of action previously pleaded, and instead pleaded claims for defamation, trademark dilution, and "defamation by implication" of several individual employees or former employees of Vision Media. The complaint increased the level and frequency of conclusory allegations about Forte's supposed authorship or other responsibility for the allegedly tortious content on the web site, but still did not allege anything specific that Forte had allegedly authored or allege any specific language showing Forte's alleged encouragement or solicitation of tortious postings. Forte supplied a waiver of service. Docket Entry No. 6. Forte also served a draft motion for Rule 11 sanctions, while warning that the newly pleaded complaint contained several defects with respect to diversity jurisdiction. Levy Affidavit, Exhibit O. With Forte's consent, Vision Media amended its complaint a second time, purportedly to address diversity jurisdiction, but still did not plead any facts about Forte's alleged conduct that took her outside her Section 230 immunity. The SAC also added several pages of allegations entitled "Preliminary Injunction," ¶¶ 30-34, seeking to compel Forte to identify the Doe defendant posting under the pseudonym "Beware." Paragraph 32(A) frankly acknowledges that each of the defamatory statements about which Vision Media complains was posted by "Beware" (not by Forte). No certificate of service was filed with the Second Amended Complaint ("SAC"), and, in fact, that complaint has not been served on any of the defendants. However, the Forte defendants now move to dismiss or, in the alternative, for summary judgment.

## ARGUMENT

**A.    The Court Lacks Subject Matter and Personal Jurisdiction.**

1. It has been well-established since early in the 19th century that a plaintiff who pleads diversity jurisdiction must establish on the face of a well-pleaded complaint that both the plaintiffs and the defendants are diverse in citizenship — that no plaintiff and no defendant are citizens of the same state. 13E Wright, Miller & Cooper, *Federal Prac. & Proc.: Juris. 3d* § 3602, at 77-79 (2009); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). Once a challenge to subject matter jurisdiction has been raised, the plaintiff has the burden of showing the existence of subject matter jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942), and the Court is obligated to consider jurisdiction on its own motion. The pleadings here do not establish diversity on either side of the caption.

First, although a corporation is a citizen of the state where it is headquartered, the Supreme Court has not been willing to extend such citizenship to other artificial persons, which are citizens of each of the states where their owners or members are citizens. *Rolling Greens MHP v. Comcast SCH Holdings*, 374 F.3d 1020, 1021-1022 (11th Cir. 2004). *See also Carden v. Arkoma Associates*, 494 U.S. 185, 188, 189 (1990). *Rolling Greens* said, "[t]o sufficiently allege the citizenships of these unincorporated business entities, a party must list the citizenships of all the members of the limited liability company . . .." 374 F.3d at 1022. The complaint alleges (¶¶ 1, 7) that plaintiff Vision Media is a Florida Limited Liability Company," and that its "member-managers . . . are Florida entities operating and located in South Florida." However, not only does the complaint not specify whether Vision Media has any **other** members or owners, besides its member-managers, but it is apparent that the "member-managers" are trusts, not corporations. Because the member-managers are trusts, plaintiff must plead **their** citizenship by alleging the identity of their beneficiaries and their trustees and sufficient information to establish the citizenship of each such individual or entity.

*See Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 199-203 (3d Cir. 2007);
*Riley v. Merrill Lynch*, 292 F.3d 1334, 1339 (11th Cir. 2002); *Laborers Local 938 Trust Fund v. B.R.
Starnes Co. of Fla.*, 827 F.2d 1454, 1457 (11th Cir. 1987). Consequently, plaintiffs cannot invoke
diversity jurisdiction unless they properly allege **both** the LLC's entire membership and, to the
extent that some members are trusts, properly allege the citizenship of each member of the trusts.
*Xaros v. U.S. Fidelity and Guar. Co.*, 820 F.2d 1176, 1181 (11th Cir. 1987).

Moreover, the caption identifies a defendant "Jane Doe (aka 'BEWARE')." Anonymous
defendants cannot be sued in diversity because, by definition, their citizenship is unknown. *Menzies
v. Doe*, 194 F.3d 174 (D.C. Cir 1999) (mem.); *Howell by Goerdt v. Tribune Entertainment Co.*, 106
F.3d 215, 218 (7th Cir. 1997); *McMann v. Doe*, 460 F. Supp.2d 259, 264 (D. Mass. 2006); *Meng v.
Schwartz*, 305 F. Supp.2d 49 (D.D.C. 2004). Plaintiffs here allege that Doe either is a "resident of
North Carolina," or at least Doe's identity "resides" with Forte in North Carolina, SAC ¶ 3, but
plaintiffs provide no reason for a belief that Doe is a North Carolinian, apart from the fact that it
would conveniently mean that she is not a Florida citizen. Moreover, Forte's inspection of IP
addresses from which the Beware messages were posted reveal that they were posted from Florida.
Forte Aff. ¶ 31. Thus, it appears that Beware and the individual plaintiffs do not have diverse
citizenship, and hence that plaintiffs cannot sue in this Court.

2. The Court also lacks personal jurisdiction of Forte and her LLC (henceforth, the two are
jointly described as "Forte" unless otherwise noted). Neither has any contacts with Florida except
on the theory that defamatory materials have been posted on 800Notes and that Forte is legally
responsible for those postings for various reasons. However, the mere provision of Internet access
to other persons who engage in tortious conduct toward a resident of the forum state is not a
sufficient basis for the exercise of personal jurisdiction over the host. *ALS Scan v. Digital Service*

*Consultants*, 293 F.3d 707 (4th Cir. 2002); *accord Whitney Information Network, Inc. v. Xcentric Venture*, 199 Fed. Appx. 738, 742-744 (11th Cir. 2006) (personal jurisdiction over Ripoff Report turned on sufficiency of allegations that host authored the allegedly defamatory comments, and of affidavits refuting those allegations). "The mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible; as well, given the omnipresence of Internet websites today, allowing personal jurisdiction to be premised on such a contact alone would eviscerate the limits on a state's jurisdiction over out-of-state or foreign defendants." *McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005).

Forte is not subject to personal jurisdiction for two separate reasons. First, the majority rule among American courts is that personal jurisdiction cannot be based on tortious activity on a web site unless the web site is commercially interactive — that is, unless Forte uses the web site to engage in commercial transactions with residents of the forum. Even then, the propriety of personal jurisdiction depends on "the nature and quality of commercial activity that an entity conducts over the Internet." *Best Van Lines v. Walker*, 490 F.3d 239, 251 (2d Cir. 2007), *quoting Zippo Mfg. Company v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa.1997).[2] In *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008), the court upheld the exercise of personal jurisdiction based on the defendant's "commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum," without any consideration of the *Zippo* test. *Id.* at 1288. However, the *Zippo* issue remains open in Florida and, in fact, the Eleventh Circuit has certified the exercise of personal jurisdiction based on a web site targeted at a Florida resident to the Florida

---

[2] *Accord Toys "R" Us v. Step Two*, 318 F.3d 446, 452 (3d Cir. 2003); *Neogen Corp. v. Neo Gen Screening*, 282 F.3d 883 (6th Cir. 2002); *Mink v. AAAA Development*, 190 F.3d 333, 336 (5th Cir. 1999).

Supreme Court. *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293 (2009) (oral argument set for Feb. 9, 2010). Vision Media cannot satisfy the *Zippo* test, assuming Florida adopts it in *Internet Solutions*, because although her web site allows users to post comments on the site, users cannot use the site to do business with Forte. The site is not commercially interactive.

Second, even apart from the *Zippo* test, Vision Media cannot assert personal jurisdiction based on Forte's operation of the 800Notes site because Forte did not intentionally direct the site at Florida residents. When a web site is directed at a national audience, the fact that a particular plaintiff is located in the forum state and thus happens to feel the effect of tortious conduct in that location does not suggest that the site's operator aimed its conduct at the forum. *See Best Van Lines v. Walker*, 490 F.3d 239, 253-254 (2d Cir. 2007); *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002). *See also Young v. New Haven Advocate,* 315 F.3d 256, 264 (4th Cir. 2002) (because article was directed at Connecticut audience, plaintiff could not sue in Virginia even though he lived there, article discussed his treatment of prisoners in Virginia, and web site could be viewed there). Unlike the defendant in the 11th Circuit's *Licciardello* case, for example, Forte neither chose to make Vision Media a subject of discussion on her web site, nor said anything about Vision Media; indeed, until Vision Media complained to her about allegedly defamatory comments, she did not know that Vision Media or any of its staff are located in Florida. Forte Aff. ¶ 21. Because she did not expressly aim any tortious activities at Florida, she could not reasonably expect to be haled into court here.

**B.     The Complaint Should Be Dismissed, or Summary Judgment Should Be Granted, Because Forte Is Immune from Suit for the Content Placed on Her Web Site**.

Moreover, the action should be dismissed, or summary judgment granted, because federal law immunizes Forte against Vision Media's suit. Under the Telecommunications Act of 1996, 47 U.S.C. § 230(c)(1), "[n]o provider or user of an interactive computer service shall be treated as a

-10-

publisher or speaker of any information provided by another information content provider." Section 230(e)(3) further provides, "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." Every court to consider this issue, including Florida's Supreme Court, has ruled that Section 230 creates a federal immunity against suit under any law, federal or state, that might impose liability on an internet provider for content supplied to a web site by a different person. Section 230

> bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions — such as deciding whether to publish, withdraw, postpone, or alter content." *Zeran v. America Online*, 129 F.3d 327, 330 (4th Cir. 1997); *see also, e.g., Ben Ezra, Weinstein & Co. v. America Online*, 206 F.3d 980, 986 (10th Cir. 2000) ("Congress clearly enacted § 230 to forbid the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions.")
>
> *Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003).[3]

The Eleventh Circuit's strong dictum in *Almeida v. Amazon.com*, 456 F.3d 1316, 1321-1322 (2006), also accepts this rule. Indeed, the statute not only protects covered defendants from being held liable, but also expressly provides that no such "cause of action may be brought" against them. 47 U.S.C. § 230(c)(3).

Congress provided this immunity because it was concerned about the impact of federal or state regulation on the "vibrant and competitive free market that presently exists for the Internet." 47 U.S.C. § 230(b)(2). As the court explained in *Zeran*, Congress was worried about the chilling

---

[3]*See also Doe v. MySpace*, 528 F.3d 413 (5th Cir. 2008); *Chicago Lawyers' Committee for Civil Rights Under Law v. Craigslist, Inc.* 519 F.3d 666 (7th Cir. 2008) *Universal Communication Systems v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007); *Carafano v. Metrosplash.com*, 339 F.3d 1119, 1125 (9th Cir. 2003); *Batzel v. Smith*, 333 F.3d 1018, 1026 *et seq.* (9th Cir. 2003); *Barrett v. Rosenthal*, 40 Cal. 4th 33 (2006); *Donato v. Moldow*, 374 N.J. Super. 475, 865 A.2d 711(2005); *Austin v. CrystalTech Web Hosting*, 125 P.3d 389, 394, 211 Ariz. 569, 569 (2003); *Schneider v. Amazon.com*, 31 P.3d 37 (Wash. App. 2001); *Doe v. AOL*, 783 So. 2d 1010, 1013-1017 (Fla. 2001).

effect that even the possibility of tort liability for the millions of postings that are disseminated through their services could have on interactive service providers, because they could not possibly screen every message for every potential problem that it might present.  "Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted."  129 F.3d at 331.  Only by protecting service providers from such suits could Congress avoid this chilling effect.

Both in the SAC, ¶ 10, and in communications threatening litigation, Forte Aff., Exhs. K, L, Vision Media admitted that Forte is an interactive computer service provider within the meaning of Section 230 — her web site provides an opportunity for Internet viewers to post their opinions about companies making marketing calls.  Vision Media warned, however, that it was an expert in getting around Section 230, and warned Forte to take down the messages about which it was complaining to avoid "the vagaries and expenses of litigation."   Exhibit K.  True to its word, the SAC employs two tactics to evade Section 230.  First, trying to characterize Forte as an "information content provider" as well as an interactive service provider, Vision Media pleads in a variety of respects that Forte either posted information, made substantive changes in information posted, removed posts favorable to plaintiff, or somehow encouraged sensational and unlawful postings that would increase the number of page views and hence advertising revenues.  Second, trying to invoke the intellectual property exception to Section 230 immunity, Vision Media alleges that the use of its name in the allegedly tortious posts dilutes its supposedly famous trademark.  Neither ruse is sufficient to evade Forte's Section 230 immunity from suit.

### 1.    Forte Is Not an "Information Content Provider" Regarding Vision Media.

The immunity for providers of interactive computer services does not extend to content that they actually "provide" to the interactive service.  Consistent with the statutory purpose, the

definition of interactive computer service is construed broadly, while the definition of information content provider is construed narrowly.  *Carafano v. Metrosplash.com*, 339 F.3d 1119, 1123 (9th Cir. 2003); *Atlantic Recording Corp. v. Project Playlist*, 603 F. Supp.2d 690, 699-700, 701 (S.D.N.Y. 2009).   Moreover, in considering the complaint's allegations, the Court should ignore merely conclusory allegations that recite a possible basis for ignoring statutory immunity without providing specific facts which, if true, would make defendant liable.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

Specifically in the context of suits seeking to circumvent qualified immunity, the Eleventh Circuit has held that allegations against defendants who enjoy an immunity must be specific and not general. *Swann v. Southern Health Partners*, 388 F.3d 834, 837-838 (11th Cir. 2004).  Since *Twombly* and *Iqbal* were decided, courts have extended the prohibition against conclusory allegations and the requirement that the plaintiff plead a "plausible" case to include complaints that seek to circumvent Section 230 immunity. *Nemet Chevrolet v. Consumeraffairs.Com*, — F.3d —, 2009 WL 5126224, at *3-*9 (4th Cir. 2009); *Cornelius v. DeLuca*, 2009 WL 2568044 , at *3 (E.D. Mo. Aug. 18, 2009); *Stayart v. Yahoo!*, 651 F. Supp.2d 873, 880-881 (E.D. Wis. 2009)*; Goddard v. Google*, 640 F. Supp.2d 1193, 1196 (N.D. Cal. 2009) (allegations that Google "'not only encourages illegal conduct, [but] collaborates in the development of the illegal content and,

-13-

effectively, requires its advertiser customers to engage in it,' unsupported by other specific allegations of fact, are mere 'labels and conclusions' amounting to a 'formulaic recitation of the elements' of CDA developer liability, and as such, they 'will not do'"); *Alvi Armani Medical v. Hennessey,* 629 F. Supp.2d 1302, 1307 (S.D. Fla. 2008) (allegations sufficiently concrete to withstand dismissal under Section 230).[4]  The courts also require more detailed pleading when, as in this case, the lawsuit imposes a burden on free speech rights.  *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002); *Hydro-Tech Corp. v. Sundstrand Corp.*, 673 F.2d 1171, 1177 n.8 (10th Cir. 1982).  Florida law requires that a claim for defamation based on written communications must set forth the allegedly defamatory words verbatim.  *Edward L. Nezelek v. Sunbeam Television Corp.*, 413 So.2d 51, 55 (Fla. 3d DCA 1982).

Vision Media has failed to plead a non-conclusory, plausible complaint establishing that Forte did anything to take her outside her statutory immunity from suit. Instead, Vision Media has relied on formulaic assertions — not tied to any specific comments posted to the web site — in attempting to imply that Forte is responsible for authoring defamatory content about plaintiffs.  SAC ¶¶ 11(A) - 11(F) and 20-25 set forth a litany of conclusory contentions that Forte either published her own commentaries on the web site, substantively edited or altered the content of posts placed on the site by others, deliberately "allowed" or encouraged postings by unidentified persons who are alleged to be bound by confidentiality agreements or court orders not to disparage plaintiff, and deliberately encouraged sensational postings in order to drive viewers to her site and hence increase advertising revenue.  Most of these allegations put Forte in the standard position of a publisher —

---

[4]Where, as here, the complaint and the documents on which it is based establish that Forte is an interactive computer service provider, Section 230 immunity can be asserted even though it is an affirmative defense.  *Fortner v. Thomas,* 983 F.2d 1024, 1028 (11th Cir. 1993).

-14-

exercising editorial functions — that Section 230 was intended to immunize, and that the cases cited in the previous section **held** remain within Section 230 immunity.

Forte would personally be responsible as an information content provider for words that she herself placed on the site. But although the SAC alleges a few allegedly defamatory words posted to the site, ¶¶ 32(A), 36, those paragraphs do not identify even a single specific message that Forte supposedly authored herself, edited into a statement, or altered. Instead, ¶ 32(A) acknowledges that it is the anonymous user "Beware" who posted the specific words about which plaintiffs complain. SAC ¶ 32(A). Nowhere does the SAC specify allegedly defamatory words that Forte is claimed to have posted. Nor is there any specific allegation specifying posts that were posted by a person bound by a court order or confidentiality agreement (nor is any such individual, or any such agreement, or any such court order, identified). And no allegations in the complaint identify any words on Forte's site that supposedly incite the publication of sensational, false, or otherwise tortious content for any reason, not to speak of to encourage more Internet traffic. Indeed, although the complaint alleges that a copy of the Internet postings from 800notes.com is "attached herein as 'Exhibit A,'" ¶ 53, the SAC was filed without any attachments. (Forte has attached the entire set of comments posted about Vision Media to her affidavit. Exhibit I).[5]

The absence of such allegations is significant because Vision Media closely monitors comments placed on the web site. If there were alterations, by Forte or anybody else, Vision Media and its counsel would surely have noticed them, and there is no reason, therefore, why they cannot

---

[5]Forte's site is thus unlike "Ripoff Report," the message board site that was at issue in *Whitney Information Network v. Xcentric Venture*, 199 Fed. Appx. 738 (11th Cir. 2006). That site operator reviewed each report that was submitted before posting it, *id.* at 743, and allegedly was paid for removing criticisms. *Id.* at 739. Forte specifically rejected Vision Media's offer of a Florida vacation and its subsequent suggestion that she be paid to review posts about Vision Media in light of its claims of falsity.

be expected to plead the factual matter that is needed to make their legal theory plausible. Moreover, Vision Media and its counsel have, themselves, posted several comments to the web site, Forte Aff. ¶¶ 20, 21 and Exh. I, and hence personally experienced the process whereby comments posted to the web site appear instantly, in too short a time to allow for human intervention. *Id.* ¶ 13.

Vision Media also alleges that Forte lost her Section 230 immunity when she allowed the allegedly defamatory postings even after its counsel had informed her of their falsity, and when she removed certain "positive" posts about Vision Media and thereby changed the "context" of the critical posts by leaving them unrebutted. However, "[d]eciding whether or not to remove content or deciding when to remove content falls squarely within [a web host's] exercise of a publisher's traditional role and is therefore subject to the CDA's broad immunity." *Murawski v. Pataki*, 514 F. Supp.2d 577, 591 (S.D.N.Y. 2007); *Mazur v. eBay Inc.*, 2008 WL 618988 (N.D. Cal. 2008), at *9. Even if it were true, as Vision Media alleges, that Forte deliberately removed posts complimentary to Vision Media to make Vision Media look bad — and that is categorically false, as Forte's affidavit shows — that precise allegation has been rejected as a basis for overcoming Section 230 liability, because the selection of content to achieve a desired tone or stance is precisely what a publisher does. *Donato v. Moldow*, 374 N.J. Super. 475, 865 A.2d 711, 725-726 (2005) Indeed, Congress included an express "Good Samaritan" provision immunizing web hosts like Forte from liability for the removal of content that they deem objectionable in any way. 47 U.S.C. § 230(c)(2). "To force a provider like [Forte] to litigate the question of whether what [she] blocked was or was not spam would render Section 230(c)(2) nearly meaningless." *e360Insight, LLC v. Comcast Corp.,* 546 F. Supp.2d 605, 609 (N.D. Ill. 2008). Similarly, an allegation that a web host "knew of the [user]'s illegal conduct and failed to prevent it is nevertheless under the ambit of section 230." *Mazur, supra*, at *9; *Zeran v. America Online*, 129 F.3d 327, 333 (4th Cir. 1997). "Any activity that can be

-16-

boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Barnes v. Yahoo!*, 570 F.3d 1096, 1102 (9th Cir. 2009).  This aspect of plaintiff's allegations is just an attempt to revive the theory, rejected by the Fourth Circuit in the leading case of *Zeran* and by the many courts that have followed it, that notice of claimed wrongdoing does not deprive the web host of immunity if it fails to take action on that notice.  The allegations that Forte is liable because she removed unspecified positive posts or allowed posts about which Vision Media had complained about thus run squarely contrary to Section 230.

Finally, Vision Media seeks to plead its way around Forte's Section 230 immunity by claiming that she deliberately encourages sensational posts to stir controversy and hence bring more viewers to her site, where they will see advertising.  Although there is no truth to these allegations — no specific statements on the web site are cited, and Forte's affidavit contradicts this allegation, ¶ 26 — even if the allegations were true they would not avoid Section 230 immunity.  A web host is not liable for unlawful contents provided by others where the host has not specifically incited the unlawful quality of the posts.  *Fair Housing Council v. Roommates.com*, 521 F.3d 1157 (9th Cir. 2008) (not liable for discriminatory content posted in response to open-ended questions for rental ads, but liable for requiring advertisers to identify the gender and sexual orientation they sought); *FTC v. Accusearch*, 570 F.3d 1187, 1199 (10th Cir. 2009) ("a service provider is 'responsible' for the development of offensive content only if it in some way specifically encourages development of what is offensive about the content").  Nowhere on Forte's site does she "specifically encourage" placement of false and defamatory content on her site, and plaintiffs never allege that she did.  Nor, indeed, are any specific examples of supposed incitement of sensational postings alleged.

Even if Vision Media's allegations were sufficient to withstand a motion to dismiss under *Iqbal* and the heightened pleading requirement that applies in immunity cases, they cannot withstand

-17-

Forte's motion for summary judgment. Undisputed evidence shows that Forte never posted anything about Vision Media; never encouraged anybody to post about Vision Media; never edited a single word in a post about Vision Media, whether to remove language from a post or add language to a post; and never encouraged any particular quality in posts about Vision Media (or anyone else discussed on the site), except for the warning not to include falsehoods. Forte Aff. ¶¶ 20, 21, 26. The undisputed evidence also shows that the only time Forte removed posts about Vision Media was in response to an "abuse" alert from a site user, when she discovered that many different messages had been posted from the same IP addresses and hence constituted spam. *Id.* ¶¶ 22-25. Although Forte removed those posts and forbade future postings from the same IP address, not only did she not forbid postings by plaintiffs generally, she specifically encouraged Mr. Levenson and his client to post its side of the story, and she left in place many postings, both from Mr. Levenson himself and from plaintiffs' staff, which remain on the message board to this date. *Id.* ¶¶ 20, 24. There is no genuine issue about the fact that this message board is operated in a strictly neutral fashion.

### 2. Vision Media's State Law Dilution Claim Does Not Evade Forte's Immunity.

Vision Media also seeks to evade Forte's Section 230 immunity by pleading a claim for dilution of its trademark, apparently trying to take advantage of the intellectual property exception to Section 230 immunity: "Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). Even assuming that state-law intellectual property claims qualify for the immunity exclusion, *but see Perfect 10 v. CCBill*, 488 F.3d 1102, 1118-1119 (9th Cir. 2007), Vision Media's claim fails for four reasons.

First, the Florida Supreme Court has ruled that the state dilution statute, Section 495.151, applies only if the defendant has used the protected mark "as a designation to identify its own goods, services, or business." *Great Southern Bank v. First Southern Bank*, 625 So.2d 463, 470 (Fla. 1993).

*See also Universal Communication Systems v. Lycos, Inc.*, 478 F.3d 413, 425 (1st Cir. 2007) (dismissing Florida dilution claim because "Lycos is not using the 'UCSY' trade name 'on' a product (or business) at all, but is simply referring to the existing company that has adopted that trade name.")  Forte has never used Vision Media's marks to identify her own web site or any other products, Forte Aff. ¶ 28, and Vision Media does not allege this element of the claim for dilution.

Second, protection under the state dilution statute extends only to marks whose recognition extends beyond the particular product that the plaintiff uses it to sell.  *Great Southern Bank*, 625 So.2d at 470 n.20**.**  Thus, a mark "that evokes an association with a specific source only when used with the particular goods or services that it identifies is not sufficiently distinctive to be protected under the antidilution statutes." *Glen Raven Mills v. Ramada Intern.*, 852 F. Supp. 1544, 1554–1555 (M.D. Fla. 1994).  *Accord Michael Caruso & Co. v. Estefan Enterprises*, 994 F. Supp. 1454, 1464 (S.D. Fla. 1998), *aff'd sub nom. Caruso v. Estefan*, 166 F.3d 353 (11th Cir. 1998). Again, Vision Media pleads only that its marks are recognized in conjunction with "professional television production services."  SAC ¶ 27.   This allegation pleads Vision Media out of coverage by Florida's anti-dilution statute.

Third, as in the *Lycos* case cited above, Vision Media's claim fails because alleges no trademark injury.  Vision Media's dilution claim is that the use of its mark on the 800Notes web site will lead viewers to denigrate the company as a telemarketer and scammer, but "any injury to [Vision Media] ultimately arises from its being criticized on the [800Notes] site. To premise liability on such criticism would raise serious First Amendment concerns. . . . [W]hile such an allegation might be relevant to a defamation claim, it is not determinative of whether [Vision Media]'s allegations can support a trademark claim. If the injury alleged is one of critical commentary, it falls outside trademark law, whether the criticism is warranted or unwarranted." *Lycos*, 478 F.3d at 423.  The

First Circuit therefore dismissed the dilution allegations in that case for failure to state a claim, and the same result should apply here.

Finally, even if a case for dilution could otherwise be made, use of a company's name to specify the target of criticism or commentary is protected by fair use as well as by the First Amendment. *Id.* at 424; *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 808-812 (9th Cir. 2003); *CPC Int'l v. Skippy Inc.*, 214 F.3d 456, 462-463 (4th Cir. 2000).

## CONCLUSION

The Second Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

HOLLAND & KNIGHT, LLP
200 South Orange Avenue
Suite 2600
Orlando, Florida 32801
Phone: (407) 425-8500
Fax: (407) 244-5288

By:        /s/ Judith M. Mercier
Judith M. Mercier (Fla. Bar No. 0032727)
judy.mercier@hklaw.com

Of counsel (pending pro hac vice admission)
Paul Alan Levy
plevy@citizen.org
Deepak Gupta
dgupta@citizen.org
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000
(202) 588-7725 (fax)

January 21, 2010                              Attorneys for Julia Forte and Octonet LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 21, 2010 I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send a notice of electronic filing to the following parties of record:

> Lee Levenson, Esquire, Counsel for Plaintiffs
> LELJDPA@aol.com

The Doe Defendant "Beware" has not been served and I do not have his or her address to send a copy of this filing.

_____/s/ Judith M. Mercier_____

Judith M. Mercier (Fla. Bar No. 0032727)

judy.mercier@hklaw.com
