UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80396-CIV-MARRA

VISION MEDIA TV GROUP, LLC, a
Florida limited liability company et al.,

Plaintiff,

vs.

JULIA FORTE, personally and JULIA FORTE
d/b/a www.800Notes.com, Advent LLC,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants Julia Forte and Octonet LLC's Motion to Dismiss or for Summary Judgment (DE 14) and Plaintiff's Vision Media TV Group, LLC's Motion for Oral Argument (DE 44).  The Court has carefully considered the motions and is otherwise fully advised in the premises.

I.  Background

Plaintiff Vision Media TV Group, LLC ("Plaintiff" "Vision Media") has filed a Second Amended Complaint against Defendants Julia Forte personally and Julia Forte d/b/a www.800Notes.com Advent LLC (collectively, "Defendants"). (DE 12.)   According to the allegations of the Second Amended Complaint ("SAC"), Plaintiff, a Florida limited liability company, is a television production company which produces short-form educational documentaries that air regionally, nationally and internationally to over 96 million households. Plaintiff also produces documentaries that they distribute to public television. (SAC ¶ ¶ 7-8.)

Defendants operate out of North Carolina but "consumers located in the Southern District

of Florida have been targeted via the defendants' web sites by the posting of Plaintiffs' location." (SAC ¶ 12.) In December of 2008, Plaintiff began losing business because clients were being misled by Defendants' website which publishes Julia Forte's ("Forte") own commentaries as well as her "selective allowance and prohibition of others' posted commentaries" in an effort to "serve her interest of increasing traffic" and "advertising revenues on the internet." In addition, she "protects anonymous defamers by refusing to identify them upon request." (SAC ¶ 14.) Forte edits, alters and deletes posts in order to increase traffic and advertising revenues. (SAC ¶¶ 15, 21.) Defendants have "knowingly and intentionally encouraged the posting of unlawful, defamatory content which has misled and continues to mislead the public about [ ] Plaintiffs and [ ] Plaintiff's brand in order to increase advertising revenues." (SAC ¶ 16.) In addition, Defendants have blocked Plaintiffs from posting on Defendants' internet site. (SAC ¶ 18.) Through this editing process, Defendants have libeled and defamed Plaintiffs. (SAC ¶ 22.) Defendants have misled the public into believing that Plaintiff is a "telemarketing company and a scammer" and not a television production company. (SAC ¶ 23.)

The SAC brings a claim for libel per se and seeks a preliminary injunction.[1] Defendants move to dismiss for lack of personal jurisdiction.[2] In addition, they move to dismiss, or for summary judgment, claiming that Forte is immune from suit for the content placed on her

---

[1] The SAC had also brought a claim for "defamation by implication - libel" by individual plaintiffs. However, Plaintiff moved to dismiss the individual plaintiffs from this suit, which the Court granted. (DE 47.) Therefore, this claim is no longer pending before the Court. In addition, Plaintiff's response to the instant motion requests that the state trademark dilution claim be dismissed without prejudice. (Resp. at 15.)

[2] Initially, Defendants moved to dismiss for lack of subject matter jurisdiction as well based on the inclusion of parties that have now been dismissed from this case. (DE 18 and 47.) Thus, this issue is now moot.

website.

II. Evidence Related to Personal Jurisdiction

A.  Defendants' Evidence

Forte lives in North Carolina. Neither she nor Octonet (previously named Advent) has ever maintained a physical office, owned or leased property, owned any bank accounts, owned any investments, had a mailing address, telephone number or fax number in Florida.  Neither she nor Octonet targeted Florida for business development, paid taxes in Florida, filed lawsuits in Florida, solicited business in Florida, advertised in Florida, had an employee, agent or business representative in Florida or been registered to do business in Florida.  (Forte Aff. ¶ 2, DE 17-1.) The website 800Notes.com is owned by Octonet, and Forte and her husband operate the website from their home in North Carolina and have no contract with any service providers in Florida. (Forte Aff. ¶ 3.)

Apart from a few news articles and essays, 800Notes is a forum where members of the public may post comments - either negative or positive - about their experiences with individuals and companies that call them to market goods, services or causes. (Forte Aff. ¶¶ 4-10.)  After a member of the public receives a marketing call, he or she can search the 800Notes website for information about the telephone number from which the call was placed and put his or her own comments on the message board about that telephone number. (Forte Aff. ¶ 10.)  If no comments have yet been posted about that telephone number, the viewer is given the option of posting about that number and hence creating a new message board about that number. (Forte Aff. ¶ 14.) Neither Forte nor her husband edit comments that others have posted and they did not author or edit any comments about Plaintiff.  The comments about Plaintiff appear exactly as they were

placed by users of the website. (Forte Aff. ¶ 11.)   The terms of service on the website states that 800Notes.com is "not in a position to investigate, censor, or otherwise ensure the accuracy of any comments, remarks or other information posted or generated by users of this Web site, and therefore . . .not responsible in any way for such Content provided by users or other third parties." (Forte Aff. ¶ 9; Terms of Service, Ex. D, attached to Forte Aff.)  All forms for posting comments warn each poster to provide only truthful information and to avoid offensive language. (Forte Aff. ¶ ¶ 12, 14, 26.)

When a user posts new content to the website, including content about a phone number not previously placed on the website, the website's software automatically and instantaneously places it on the message board without any review or intervention. (Forte Aff. ¶ 13.)  The site hosts look at individual messages only when a viewer marks a message as abusive.  In response, the message is either left in its entirety or removed in its entirety. Messages are not edited. Messages are removed if they are spam, contain advertising or vulgar language. (Forte Aff. ¶ 16.)

Comments about Plaintiff were placed on 800Notes.com about three different telephone numbers linked to Plaintiff and were placed by site users, not by Defendants.  The comments were both negative and positive.  Several persons purporting to represent Plaintiff have posted defenses of Plaintiff, which counter the criticism of the company.  Defendants did not add anything to these posts and did not remove any portion of the posts. (Forte Aff. ¶ 20.) Defendants were not aware that posts about Plaintiff were added to the site, or that Plaintiff was located in Florida until Defendants received "legal demands and threats" from Plaintiff's counsel. Defendants did not target Plaintiff or Florida. (Forte Aff. ¶ 21.)

Around the time the legal demands were received, a series of about a two dozen rebuttal

postings that favored Plaintiff were placed on the website. The postings purported to represent a discussion among several users. However, a site user marked the postings as abusive, and upon reviewing them, Forte determined that almost all of them were posted from the same two IP addresses, indicating that they came from just two individuals. Forte determined they were spam, and removed them. (Forte Aff. ¶ 22.)

### B.  Plaintiff's Evidence

Plaintiff is a limited liability company organized under the laws of the state of Florida. (Mark Miller Aff. ¶ 1, DE 28.)  One of the posts removed by Defendants was a comment from Plaintiff's company representative reporting that its company had an "A" rating with the Better Business Bureau of South Florida.  Plaintiff's representative submitted this post as a response to a false post that claimed the company was a scam.  Defendants allowed the negative post to remain. (Miller Aff. ¶ 11.)  Posts that were favorable to Plaintiff were removed and false posts remained. (Miller Aff. ¶ 12.)

### III.  Legal Standard Relating to Personal Jurisdiction

The plaintiff's burden in alleging personal jurisdiction requires that the plaintiff establish a prima facie case of personal jurisdiction over a nonresident defendant.  A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.  If by defendant's affidavits or other competent evidence, defendant sustains the burden of challenging plaintiff's allegations, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony or documents. However, where the evidence conflicts, the district court must construe all reasonable inferences

in favor of the plaintiff.  See Future Tech. Today, Inc., v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000); Robinson, 74 F.3d 253, 255 (11th Cir. 1996) citing Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

With respect to specific jurisdiction, the determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. When jurisdiction is based on diversity, Rule 4(e) of the Federal Rules of Civil Procedure requires that the assertion of jurisdiction be determined by the state long-arm statute.  If there is a basis for the assertion of personal jurisdiction under the state statute, the Court must next determine whether: (1) sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment and that (2) maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989).  Only if both prongs of the Due Process analysis are satisfied may this Court exercise personal jurisdiction over a nonresident defendant. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996) citing Madara, 916 F.2d at 1514; International Shoe Co. v. Washington, 326 U.S. at 316.

Minimum contacts for specific jurisdiction involve three criteria:  First, the contacts must be related to the plaintiff's cause of action or have given rise to it.  Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws.  Finally, the defendant's contacts within the forum state must be such that it should reasonably anticipate being haled into court there. See Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 631 (11th Cir. 1996).

IV.  Discussion Relating to Personal Jurisdiction

Plaintiff asserts personal jurisdiction over Defendants under the following provision of the Florida long-arm statute:

> 1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (b) Committing a tortious act within this state.

Fla. Stat. § 48.193.

A recent case from the Florida Supreme Court addressed the following certified question posed by the Eleventh Circuit Court of Appeals: "Does a nonresident commit a tortious act within Florida for purposes of section 48.193(1)(b) when he or she makes allegedly defamatory statements about a company with its principal place of business in Florida by posting those statements on a website, where the website posts containing the statements are accessible and accessed in Florida?"  Internet Solutions Corp. v. Marshall, — So. 3d —, 2010 WL 2400390, at * 1 (Fla. June 17, 2010).  The Florida Supreme Court answered the question in the affirmative, holding that while posting the defamatory material alone would not constitute the commission of a tortious action within Florida for the purposes of section 48.193(1)(b), once the material is accessible and accessed in Florida, personal jurisdiction is established under the state long-arm statute.  Id.

The facts of Marshall are as follows: The defendant, an individual residing in the state of Washington, owned and operated a noncommercial website in which she posted information about consumer-related issues.  The website also allowed third-parties to comment on the

defendant's posts. The defendant made a post on her website about another website, which was operated by the plaintiff, and then third-parties posted comments about the defendant's post. The defendant's website listed the plaintiff's Florida addresses.

In finding jurisdiction under the state long-arm statute, the Florida Supreme Court rejected the defendant's argument that her acts were completed in the state of Washington and nothing could be published on a Florida computer until the reader reached into Washington state to retrieve it. Instead, the court stated that the nature of the web is "fundamentally different from a telephone call, an email or a letter" and that by posting material on her website, the defendant made the material accessible by anyone with internet access worldwide. Therefore, once the material was published in Florida, the tort of defamation was committed for purposes of the long-arm statute. Id. at * 13.

Here, the facts differ slightly from the facts in Marshall. Unlike in Marshall, Defendants did not author the posts made on the website. Instead, Defendants essentially manage the website and the posts made on the website by others. Given that by hosting the website, Defendants have made the material accessible by anyone with internet access and the material was published in Florida, the Court will assume arguendo that Plaintiff has established personal jurisdiction over Defendants for purposes of the state long-arm statute.

The Court next turns to minimum contacts. When an intentional tort is alleged, personal jurisdiction may be supported over a non-resident defendant who has no other contacts with the forum. Calder v. Jones, 465 U.S. 783, 790 (1984). In Calder, a California entertainer and resident brought suit, claiming she was a victim of libel by an article published in the National Enquirer, a publication with a large California circulation. Id. at 784. The Calder defendants

were residents of Florida. Id. at 785-86. One of the defendants, a reporter, did most of his research in Florida and made several telephone calls to California for information. Id. at 785. The other defendant had no contacts with Florida, and simply reviewed the reporter's article. Id. at 786. In finding that personal jurisdiction over the Florida defendants was properly asserted in the California court, the Supreme Court noted that the defendants knew that the article would harm the plaintiff and that the injury would be sustained by the plaintiff in California, the state where she lived and worked and where the publication had its largest circulation. Id. at 789-90. Accordingly, the United States Supreme Court held that personal jurisdiction can be based on an intentional act that was "expressly aimed" at the forum state and which the defendant knew would cause harm in the forum state. Id. In other words, personal jurisdiction over defendants may be based on the "effects" of their conduct. Id. at 789.

The Fifth Circuit addressed the Calder "effects test" in the internet context in Revell v. Lidov, 317 F.3d 467 (5th Cir. 2002). There, the former associate director of the FBI, a Texas resident, sued the Board of Trustees of Columbia University, whose principal offices are in New York, and a Massachusetts author, in Texas court, for defamation arising out of an article posted on a website maintained by the Columbia School of Journalism. Id. at 469. In finding no minimum contacts, the Revell court stated that the article at issue contained no reference to Texas, did not refer to Texas activities of the plaintiff and was not directed at Texas readers. Id. at 473. In other words, Texas "was not the focal point of the article or the harm suffered, unlike Calder." Id. The article dealt exclusively with the plaintiff's actions as associate deputy director of the FBI, and nothing about his activities in Texas. Id. at 474. Therefore, the post on the website was "directed at the entire world, or perhaps just concerned U.S. citizens. . . [b]ut

9

certainly it was not directed specifically at Texas." Id. at 475; see also Cadle Company v. Schlichtmann, 123 Fed. Appx 675, 680 (6th Cir. Feb. 8, 2005) (state of Ohio did not have personal jurisdiction over website owner based on allegedly defamatory statements made about Ohio-based debt collector given that the website referred to the Ohio resident's Massachusetts activities and was not directed at Ohio residents); Young v. New Haven Advocate, 315 F.3d 256, 263 (4th Cir. 2002) (Calder does not require a finding of jurisdiction in Virginia based on a Connecticut newspaper posting an article on its internet site about a Virginia prison warden and his Virginia prison).

In Full Sail, Inc. v. Spevack, No. 603CV887ORL31JGG, 2003 WL 25277185 (M.D. Fla. Oct. 21, 2003), the court discussed the Calder "effects test" with respect to informational websites that allow third parties to post comments. The court held that the Arizona defendants did not have sufficient minimum contacts with Florida because there was no evidence demonstrating that the targeted audience was not the entire United States and there was no evidence that the site was expressly aimed at a Florida audience. Id. at * 6.

Here, there is no record evidence showing that the website at issue targeted Florida or that Defendants acted to aim their conduct at a Florida audience. The only evidence submitted by Plaintiff for the Court's consideration is that one of the posts submitted by Plaintiff and removed by Defendants was a comment that Plaintiff had an "A" rating with the Better Business Bureau of South Florida. The Court is hard-pressed to see how the removal of a mitigating post submitted by Plaintiff on Defendants' website causes harm in the state of Florida. Furthermore, these facts differ substantially from facts where the Calder effects test has been met; namely, the intentional use of a Florida plaintiff's trademarked name and picture on a website accessible in Florida in a

manner meant to imply the endorsement by the plaintiff of the defendant's product. See Licciardello v. Lovelady, 544 F.3d 1280, 1287-88 (11th Cir. 2008).  Finally, although the Eleventh Circuit has stated that it has "not established a firm rule for personal jurisdiction in the internet context," the Court has noted, in discussing general jurisdiction, that "the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum." Fraser v. Smith, 594 F.3d 842, 847 (11th Cir. 2010).  For these reasons, the Court finds that Defendants do not have constitutionally sufficient contacts with the state of Florida.

     Next, the Court will discuss whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." In resolving this issue, the Court considers the 1) the burden on the defendant in defending the lawsuit; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies and 5) the shared interest of the states in furthering fundamental substantive social policies.  Cronin v. Washington Nat. Ins. Co., 980 F.2d 663, 671 (11th Cir. 1993) citing Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 113 (1987); Madara, 916 F.2d at 1517.  Here, Defendants operate out of North Carolina. (SAC ¶ 12; Forte Aff. ¶ 2.)  Thus, the burden to defend themselves in a Florida lawsuit is high.  Notably, Plaintiff has failed to identify any facts or make any arguments in support of finding that the state of Florida has an interest in adjudicating this dispute or that jurisdiction over Defendants would comport with fair play and

11

substantial justice.[3]

Given that the Court is granting the motion to dismiss for lack of personal jurisdiction, the Court will not address Defendants' motion to dismiss or alternatively for summary judgment based on Forte's alleged immunity pursuant to 47 U.S.C. § 230(c)(1).

V.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendants Julie Forte and Octonet LLC's Motion to Dismiss or for Summary Judgment (DE 14) is **GRANTED IN PART AND DENIED AS MOOT IN PART.**  The motion to dismiss for personal jurisdiction is granted.  The motion to dismiss or alternatively for summary judgment pursuant to 47 U.S.C. § 230(c)(1) is denied as moot.   The Court will separately issue judgment for Defendants.

---

[3] The Court also notes that Plaintiff makes a vague request for jurisdictional discovery, stating this is "factual issue that requires discovery," and that while there is "enough information for th[e] Court to overrule any objection to personal jurisdiction," . . . "if the Court disagrees, discovery should be permitted." (Resp. at 4.)  However, Plaintiff makes no request for specific information from Defendant to establish personal jurisdiction.  Plaintiff must provide the Court with some showing establishing the need for jurisdictional discovery.  See Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 n.7 (11th Cir. 1999) (no error when district court dismissed case before any discovery efforts were made when only allusion to jurisdictional discovery was on the first page of the memorandum in opposition to the motion to dismiss and the plaintiffs failed to specify what they thought could or should be discovered); Instabook Corp. v. Instantpublisher.com, 469 F. Supp. 2d 1120, 1127 (M.D. Fla. 2006) (denying request for jurisdictional discovery when requesting party "had only generally requested jurisdictional discovery, without explaining how such discovery would bolster its contentions").

2) Plaintiff's Vision Media TV Group, LLC's Motion for Oral Argument (DE 44) is

**DENIED.**[4]

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of July, 2010.

_____
KENNETH A. MARRA
United States District Judge

---

[4] In addition, the Court denies Plaintiff's application to hold its motion for voluntary dismissal "in abeyance" until the Court ruled on the instant motion. (DE 35.) Given that the Court does not have jurisdiction over Defendants, the Court will not issue any more rulings in this case.